UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STANLEY WILSON     CIVIL ACTION

VERSUS     No.: 19-12314

OCHSNER CLINIC FOUNDATION, d/b/a OCHSNER HEALTH SYSTEM and ABM INDUSTRIES INCORPORATED     SECTION: "J" (2)

## ORDER & REASONS

Before the Court is a *Motion to Dismiss* **(Rec. Doc. 4)**, filed by Defendant, Ochsner Clinic Foundation ("Ochsner"), and an opposition thereto (Rec. Doc. 6) filed by Plaintiff, Stanley Wilson ("Plaintiff"). Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

On December 18, 2017, Plaintiff was hired by Ochsner as a housekeeper with Ochsner's Environmental Services. (Rec. Doc. 1-1). On January 21, 2018, Plaintiff was informed that ABM Industries Inc. ("ABM") was assuming housekeeping duties at Ochsner, and Plaintiff would be an ABM employee thereafter.[1] During his time employed by ABM and working at various Ochsner locations, Plaintiff alleges he endured several harassing and discriminatory workplace incidents surrounding his sexuality and mental health.

At some point in early 2018, Plaintiff's supervisor, Mr. Curry, told Plaintiff that he was "too loud" and needed to "straighten up." Plaintiff believes this was an

---

[1] However, according to Plaintiff's Memorandum in Opposition to ABM Industries' Motion to Dismiss (Rec. Doc. 12) and Ochsner's Position Paper (Rec. Doc. 12-1) Plaintiff is either employed by Ochsner or employed jointly by Ochsner and ABM.

insinuation about his sexuality. In April 2018, Plaintiff's co-worker Francisco Ortega threw a "chocolate candy mini egg" at the back of Plaintiff's head. Towards the end of May 2018, Plaintiff's co-worker Rose Washington told Plaintiff he was going to hell because he was gay, and subsequently used foul language towards Plaintiff on multiple occasions. Plaintiff reported these incidents to several different supervisors, and no action was taken to correct his co-workers' behavior.

The inciting incident that led to the present litigation, however, occurred on June 12, 2018. Plaintiff was on lunch break in the parking garage when he attempted to voice-text his co-worker Darius Ellis the following, "I'm looking at the sky in the parking garage, about to walk inside, just looking around." Unfortunately, Plaintiff's phone misunderstood his statement, and Mr. Ellis received a text saying, "I just want to die, in the parking garage, about to walk inside, just looking down."

Plaintiff returned to his work area, where within thirty minutes he was approached his then-supervisor Tanya Hopkins. Hopkins, accompanied by several security personnel, escorted Plaintiff to the emergency department because his text indicated he was suicidal. Plaintiff explained the miscommunication with his phone and stated that although he took Zoloft for depression, he was in no way suicidal.

Ochsner doctors Nwosu, Furrh, and Galaneu disregarded Plaintiff's explanations, stating that they had the power to confine him to the hospital for as long as a week. When Plaintiff continued to resist voluntary confinement, the emergency department staff allegedly threatened to send Plaintiff involuntarily to an overnight mental health facility in Shreveport, Louisiana. This caused Plaintiff to sign paperwork admitting himself the Ochsner's inpatient psychiatry department, as he was worried he would be unable to return to New Orleans in enough time to care for his 87-year-old mother. En route to the facility, Plaintiff attempted to escape by jumping out of his wheelchair and fleeing. Before he got far, however, an Ochsner staff member chased him down and tackled him.

The following day at 3:00 pm, the city coroner inspected Plaintiff and found him non-committable. Upon his return to work, Plaintiff learned that Ms.

Washington was spreading rumors that he had attempted to commit suicide by jumping off the roof of the parking garage.

Over the next few months, Plaintiff had a series of increasingly escalated incidents with his co-workers and supervisors. As these incidents are not particularly relevant to the outcome of the present motion, it suffices to say Plaintiff paints a picture of a hostile and discriminatory work environment. *Id.* On October 19, 2018, Plaintiff's employment was finally terminated.

On August 1, 2019, Plaintiff brought suit against Ochsner and ABM in Louisiana's Twenty-Fourth Judicial District Court, asserting four causes of action:

1) False Imprisonment;
2) Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress;
3) violation of the Americans with Disabilities Act ("ADA");
4) violation of Louisiana Employment Discrimination Law.

On August 27, 2019, Ochsner timely removed the case to this Court. On September 3, 2019, Ochsner filed the instant motion, which asks the Court to dismiss Plaintiff's false imprisonment and emotional distress claims pursuant to Rule 12(b)(1) and 12(b)(6).

## **LEGAL STANDARD**

In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" *Krim v. pcOrder.com*, Inc., 402 F.3d 489, 494 (5th Cir. 2005). The party asserting jurisdiction must carry the burden of proof for a Rule 12(b)(1) motion to dismiss. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir.2011). The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). *United States v. City*

*of New Orleans*, No. 02–3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003). If a court lacks subject matter jurisdiction, it should dismiss without prejudice. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209 (5th Cir. 2010). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hill v. City of Pasadena*, 561 F.2d 606, 608 (5th. Cir. 1977) (per curiam)).

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal citations omitted). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

## **DISCUSSION**

The Court will address each claim Ochsner seeks to dismiss in turn.

## I. FALSE IMPRISONMENT

Ochsner seeks dismissal of Plaintiff's false imprisonment claim under the Louisiana Medical Malpractice Act ("LMMA.) The LMMA requires malpractice claims against qualified health care providers be brought before an administrative medical review panel before a plaintiff can bring that action in a court. La. R.S. § 40:1299.47(B)(1)(a)(i); *see also Taylor v. Ochsner Clinic Foundation*, No. 11-1926 WL 6140885 (E.D. La. Dec. 2011). Unless all parties to the suit expressly waive the requirement, a malpractice suit must be dismissed by a trial court if the medical review panel has not rendered a final ruling. *See Craig v. Our Lady of the Lake Regional Medical Center*, No. 15-814 WL 1113326 (M.D. La. Mar. 2017); *see also Flagg v. Elliot*, No. 14-852 WL 3715127 (E.D. La. June 2014). Although Plaintiff has filed his claim before the medical review panel, he has yet to receive a final ruling (Rec. Doc. 6). "The [L]MMA applies only to acts of 'malpractice;' all other tort liability on the part of a qualified health care provider is governed by general tort law." *Coleman v. Deno*, 813 So. 2d 303 (La. 01/25/02). Therefore, if Plaintiff's false imprisonment claim is malpractice then it is governed by the LMMA and must be dismissed without prejudice as premature.[2] Conversely, if the false imprisonment claim sounds in general tort law, it may proceed.[3] *Id.*

Plaintiff's primary argument in opposition is that false imprisonment is an intentional tort, and the definition of malpractice is "any *unintentional* tort or breach of contract based on health care or professional services rendered." La. R.S. § 40: 1231.1 (A)(13); *see also Dycus v. Martin Marietta Corp.* 568 So. 2d. 592, 594 (La. Ct. App. 1990) (stating that false imprisonment is traditionally characterized as an intentional tort). Therefore, his false imprisonment claim sounds in general tort and not medical malpractice, rendering the LMMA inapplicable to his claim.

---

[2] The Court's analysis on this issue is the same under either 12(b)(1) or 12(b)(6). Federal district courts interpreting the LMMA have dismissed suits for prematurity using both rules. See Craig v. Our Lady of the Lake Regional Medical Center, No. 15-814 WL 1113326 (M.D. La. Mar. 2017); see also Moll v. Intuitive Surgical, Inc., No. 13–6086, 2014 WL 1389652, at *3 (E.D .La. Apr. 1, 2014); Voorhies v. Administrators of the Tulane Educational Fund, No. 11–3117, 2012 WL 1672748, at *9 (E.D.La. May 10, 2012). The exact rule utilized is irrelevant, either way the claims "are premature and must be dismissed without prejudice." Taylor v. Ochsner Clinic Found., Nos. 11–1926, 11–2221, 2011 WL 6140885, at *4, 10 (E.D.La. Dec. 9, 2011).

[3] There is no argument by Plaintiff that Ochsner was not a qualified health care provider.

Plaintiff proffers further support for his position by citing the six-factor test elucidated by the Louisiana Supreme Court in *Coleman*. 813 So. 2d 303, 315. In *Coleman*, the Louisiana Supreme Court pointed to six factors courts should consider when deciding whether a tortious act falls within the ambit of medical malpractice or general tort law. *Id.* The six factors are as follows:

1) whether the particular wrong is treatment related or is caused by a dereliction of professional skill;
2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
3) whether the pertinent act or omission involved assessment of the patient's condition;
4) whether the incident occurred in the context of a physician-patient relationship, or was within the scope of activities a hospital is licensed to perform;
5) whether the injury would have occurred if the patient had not sought treatment; and
6) whether the tort alleged was intentional. *Id.*

Plaintiff points to the sixth factor, whether the tort was intentional, as a dispositive factor in his favor. Yet, every other factor militates against Plaintiff's argument. Essentially, Plaintiff alleges that Ochsner and its employees failed to comply with Louisiana's Mental Health Law when committing him to its inpatient psychiatry department, thereby making his detention unlawful. La. Rev. Stat. § 28:53.[4] Briefly addressing the *Coleman* factors opposing Plaintiff's arguments:

1) Plaintiff's alleged wrong resulted from Ochsner doctors exhibiting a dereliction of professional skill in coercing Plaintiff into the inpatient

---

[4] Detention must be unlawful for there to be a false imprisonment. See Hays v. Hansen, 692 So. 2d 3 (La. Ct. App. 4th Cir. 1997).

psychiatry department when in reality Plaintiff was not a danger to himself;

2) Plaintiff's alleged wrong would require expert testimony from mental health professionals as to what the proper standard of care is when faced with a recalcitrant patient who is reportedly suicidal;

3) the act of committing Plaintiff to the inpatient psychiatry department required an assessment of Plaintiff's mental condition, namely whether Plaintiff was a danger to himself; and

4) Ochsner is a qualified health care provider licensed to accept patients with mental health conditions pursuant to Louisiana's Mental Health Laws.

The fifth *Coleman* factor is not particularly relevant as Plaintiff did not "seek" treatment in this case. Thus, Plaintiff's entire argument hinges on the classification of his claim as an intentional tort. A review of Louisiana jurisprudence, however, reveals courts routinely determine that delictual conduct plead as a traditional intentional tort can still sound in medical malpractice. *See Coleman*, 813 So. 2d 303, 315; *Bolden v. Dunaway*, 727 So. 2d. 597, 97-1425 (La. App. 1 Cir. 12/28/98); *In re Medical Review Panel for Claim of Larche*, 714 So. 2d 56, 97-2397 (La. App. 4 Cir. 4/15/98). Indeed, the only two cases directly addressing claims that mental health commitment constitutes false imprisonment agree that those claims sound in malpractice. *See Prisk v. Palazzo*, 668 So. 2d. 415, 95-1475 (La. App. 4 Cir. 1/19/96) and *Craig*, WL 1113326.

In *Coleman* itself, the appellate court determined the alleged tortious act was properly characterized as the intentional tort of "improper transfer," and thus outside of the LMMA.[5] 813 So. 2d 303, 312. The Louisiana Supreme Court overturned, holding that the true nature of an improper transfer claim "is really a claim of failure to properly diagnose." *Id.* at 313. A hospital's decision on where and whether to administer care is at its core a decision regarding medical treatment, and as such is

---

[5] The tort of improper transfer is exactly what it sounds like. It alleges the healthcare provider intentionally transferred the patient from one healthcare facility to another, usually for a lack of funds.

precisely the sort of claim the legislature intended to be covered by the LMMA. *Id.* at 317 (citing *Bolden*, 97-1425 and *Vachon v. Broadlawns Medical Foundation,* 490 N.W. 2d 820 (Iowa 1992)). Here, Plaintiff's false imprisonment claim is also fundamentally a failure to properly diagnose claim. The crux of Plaintiff's allegation is Ochsner staff members misdiagnosed him as a suicide risk, thereby causing them to seek to confine him when it was unnecessary. There is no appreciable difference between the alleged failure to properly diagnose a physical ailment and the alleged failure to properly diagnose a mental health condition. Both allegations are treatment related and thus sound in malpractice.

The Court notes that *Coleman* explicitly referenced the plaintiff's failure to actually plead an intentional tort. 813 So. 2d 313. ("The court of appeal thus crafted an intentional tort that was not plead, not prayed for in relief, not argued, not tried, and not submitted to the jury."). Here, Plaintiff has strenuously advocated and plead for the intentional tort of false imprisonment. Nonetheless, the Court finds that the mere pleading of an intentional tort does not per se entitle a plaintiff to escape the LMMA. The Court's finding is buttressed by the line of cases treating claims for the intentional tort of medical battery as claims of medical malpractice under the LMMA. *See In re Medical Review Panel for Claim of Larche*, 714 So. 2d 56 (citing *Lugenbuhl v. Dowling*, 96-1575 701 So. 2d 447 (La. 10/10/97)); *Hodge v. Lafayette General Hospital,* 399 So. 2d. 744 (La. App. 3rd. Cir. 1981); *Pericle v. St. Paul Fire & Marine Ins. Co.*, 349 So. 2d 1289 (La. App. 1st Cir).

Early claims against physicians or health care providers for lack of informed consent, or lack of any consent, were brought under the legal theory of battery. *Lugenbuhl*, 701 So. 2d. 447. In *Lugenbuhl*, however, the Louisiana Supreme Court made clear that "[w]hile perhaps the performance of a medical procedure without obtaining any kind of consent, in the absence of an emergency, technically constitutes a battery, liability issues involving inadequate consent are more appropriately analyzed under negligence or other fault concepts." *Id.* at 452. This shift in legal theory was at least partly driven by a desire to prevent plaintiffs from circumventing the LMMA by pleading intentional tort claims with superficial validity, but which

8

were in essence medical malpractice claims. *In re Medical Review Panel for Claim of Larche*, 714 So. 2d 56 (citing *Lugenbuhl*, 701 So. 2d 447). The same rationale dictates the Court not allow Plaintiff to avoid the LMMA with an artfully plead false imprisonment claim.

Finally, the cases *Prisk*, 668 So. 2d. 415 and *Craig*, WL 1113326, while not binding on this Court, are particularly instructive. The *Craig* court, citing *Prisk*, states:

> When a person is admitted involuntarily to a treatment facility pursuant to an emergency certificate, Louisiana law—often referred to as the "Mental Health Law"—requires physicians and medical facilities to undertake certain procedural measures both before and after a person is committed to the treatment facility. The special requirements that are imposed on physicians and medical facilities by the Mental Health Law are the standards [that] physicians and hospitals must adhere to in the initial stages of treatment....any breach of that standard of care is medical malpractice as defined in [Louisiana Revised Statutes section 40:1231.1(A)(13)], even if the tort alleged by a plaintiff customarily is considered an intentional tort, such as false imprisonment.

2017 WL 1113326 *3 (citations omitted).

The Court sees no reason to deviate from the well-reasoned decision of the *Craig* court.[6] On the contrary, the decision in *Craig* dovetails nicely with the application of the *Coleman* factors as well as Louisiana courts' treatment of claims of intentional medical battery. Plaintiff argues his claim is distinguishable from those at issue in *Prisk* and *Craig* because Ochsner allegedly had nefarious intentions and used underhanded tactics in getting him to agree to commitment (Rec. Doc. 6). Such arguments are incorrect or inapposite. First, the legislature "did

---

[6] In both Prisk and Craig the plaintiff was involuntarily committed pursuant to an emergency certificate. Here, the Plaintiff was voluntarily committed after doctors threatened to have him involuntarily committed. The Court finds no appreciable distinction between the two situations. In either situation, the rules and standards governing the health care providers are found in the Mental Health Law. La. R.S. § 28:52-54.

9

not intend for the applicability of the Medical Malpractice Act to depend on the motives of the doctors….at the time of the alleged wrongful acts." *Coleman*, 813 So. 2d 303, 317 (citing *Bolden*, 727 So. 2d 597). Secondly, it is undisputed that Plaintiff, inadvertently or not, sent a text indicating suicidal thoughts. (Rec. Doc 1). The subsequent actions taken by health care providers, regardless of their character, falls under the definition of medical treatment and thus are covered by the LMMA.

Accordingly, the Court must dismiss without prejudice Plaintiff's false imprisonment claim for failing to exhaust the requisite state administrative remedies. *See Flagg*, 2014 WL 3715127 *4 (denying a plaintiff's request that his claim be stayed as opposed to dismissed).

## II. NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Any claims by Plaintiff against Ochsner for negligent infliction of emotional distress are barred by Louisiana's Workers' Compensation Law, La. R.S. § 23:1032. Louisiana's Workers' Compensation Law is an employee's exclusive remedy for all negligence claims arising out of their employment, including negligent infliction of emotional distress. *Bourgeois v. Curry*, 2005-0211 921 So. 2d 1001 (La. App. 4 Cir. 12/14/05). Plaintiff asserts that ABM Industries and Ochsner are his "joint employers" (Rec. Doc. 12), and Ochsner claims Plaintiff as its employee in its position paper (Rec. Doc. 12-1). Thus, this Court has no jurisdiction over Plaintiff's claim of negligent infliction of emotional distress against Ochsner.

Plaintiff's intentional infliction of emotional distress claims require a more substantive analysis. A claim against an employer alleging an intentional tort is not barred by Louisiana's Workers' Compensation Law. La. R.S. § 23:1032. *See also Bourgeois,* 921 So. 2d 1001. An action for intentional infliction for emotional distress consists of three elements: 1) the conduct of the defendant was extreme and outrageous; 2) the emotional distress suffered by the plaintiff was severe; and 3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *Lawson v. Straus*, 98-2096 750 So. 2d 234, 240 (La. App. 4 Cir. 12/8/99). The burden of proving intentional infliction of emotional distress is a high one. "Plaintiff must show that

10

[Defendant's] conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Stewart v. Caton*, No. 13-823 WL 2013 4459981 *10 (E.D. La. Aug. 2013).

The majority of harassment Plaintiff suffered epitomizes the mere insults and petty oppressions courts consistently find do not constitute intentional infliction of emotional distress. *See White v. Monsanto Company*, 585 So.2d 1205 (La. 1991) (holding that a one-minute tirade against employees is not outrageous); *see also Gressett v. Southwest Airlines Company*, 216 F. Supp. 3d 743,748 (holding that an airline employee throwing peanuts at a passenger and calling the passenger "white trash" did not meet the burden for intentional infliction of emotional distress). Plaintiff alleges only one incident that remotely approaches the level of conduct required to prove a claim of intentional infliction of emotional distress. That incident was Ms. Washington telling him he would go to hell due to his sexuality. (Rec. Doc. 1). As an isolated incident, however inappropriate it may be, such conduct does not rise to the level of workplace harassment that Courts have recognized as intentional infliction of emotional distress. *See Garcia v. Algiers Charter Schools Association, Inc.*, No. 17-8126 WL 4932052 (E.D. La. Oct. 2018) (holding that plaintiff had stated a claim for intentional infliction of emotional distress when a supervisor, continuously over a period of three months, made graphic and violent sexual statements to plaintiff at work, via phone, via text, and in front of plaintiff's students).

Furthermore, the second element of intentional infliction of emotional distress requires Plaintiff to prove symptoms of emotional distress like "neuroses, psychoses, chronic depression, phobia, and shock." *Gressett*, 216 F. Supp. 3d. 749 (citing *Pate v. Pontchartrain Partners, LLC*, No. 13–6366, 2014 WL 5810521, at *4 (E.D. La. Nov. 7, 2014)). Plaintiff does not plead any facts — visits to health care providers as result of the emotional stress, physical symptoms resulting from the emotional distress — that would allow him to prove he suffered actual severe emotional distress. *See Aronzon*

*v. Southwest Airlines*, No. 03-394 2004 WL 57079 (E.D. La. Jan. 2004). Mere humiliation, dismay, anxiety, confusion, etc. are insufficient to prove genuine severe emotional distress. *Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1030 (La. 2000).

Accordingly, the Court finds Plaintiff has not plead sufficient facts to support his claim for intentional infliction of emotional distress.

### III. OPPORTUNITY TO AMEND

The Court should freely give leave [to amend a pleading] when justice so requires. Fed. R. Civ. P. 15(a)(2). Thus, rule 15(a) "evince a strong bias in favor of granting. . .. leave to amend a pleading." F.D.I.C. v. Connor, 20 F. 3d 1376. 1385 (5th Cir. 1994). Therefore, with respect to his intentional infliction of emotional distress claim, the Court finds Plaintiff should be granted leave to amend his complaint.

### CONCLUSION

Accordingly,

Defendant Ochsner's *Motion to Dismiss* **(Rec. Doc. 4)** is hereby **GRANTED.** Plaintiff shall have twenty-one days from the issuance of this order to amend his complaint and remedy the pleading deficiencies identified herein.

**IT IS FURTHER ORDERED** that Plaintiff's claims for false imprisonment, negligent infliction of emotional distress and intentional infliction of emotional distress be dismissed without prejudice.

New Orleans, Louisiana this 4th day of November, 2019.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE